# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EMILY WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV327 |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SARPY COUNTY, NEBRASKA, | ) | |
| UNKNOWN CORRECTIONAL OFFICERS, | ) | |
| and UNKNOWN PHYSICIANS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendant Sarpy County, Nebraska's (Sarpy County) Motion for Summary Judgment (Filing No. 28).[1] The defendant filed a brief (Filing No. 30) and an index of evidence (Filing No. 29) in support of the motion. The plaintiff filed a brief (Filing No. 39) and an index of evidence (Filing Nos. 36, 37, 40 & 41) in opposition to the motion. The defendant filed a brief (Filing No. 45) and an index of evidence (Filing No. 46) in reply.

## INTRODUCTION

The plaintiff was transferred as an inmate from the Douglas County Correctional Facility in Omaha, Nebraska, to the Sarpy County Jail (SCJ) in Sarpy County, Nebraska, on July 23, 2007. Filing No. 1, Ex.1 - Complaint ¶ 12. On October 16, 2007, while in a common area within the SCJ, the plaintiff leapt from a wall and fractured her ankle. *Id.* ¶ 15. The plaintiff claims that after suffering the injury she repeatedly requested medical assistance and was forced by guards to walk on her fractured ankle, furthering and worsening the injury. *Id.* ¶¶ 16-17. Additionally, the plaintiff alleges that although the SCJ staff was placed on notice of the plaintiff's mental health conditions, her prescribed medications, and her desire for the medications, the staff failed to provide her with the needed medications. *Id.* ¶ 14. The plaintiff is pursuing several claims including violations

---
[1] The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties. **See** Filing No. 17 - Consent.

of 42 U.S.C. § 1983 and a state law claim for negligence.[2] *Id.* ¶¶ 37, 41, 44, 49, 55, 61, 67.

**UNCONTROVERTED FACTS**

1. On or about July 23, 2007, the plaintiff was transferred as a pre-trial detainee from the Douglas County Correctional Center in Omaha, Nebraska, to the SCJ in Sarpy County, Nebraska. **See** Filing No. 29, Ex. A(1) - Booking Information p. 70.[3]

2. John Erickson (Erickson) is a licensed mental health practitioner (LMHP), with a masters degree in social work who has a contract with the defendant, Sarpy County, to provide mental health screening, suicide risk assessments, and mental health counseling services for inmates at the SCJ. *Id.* Ex. B - Erickson Depo. p. 3-4.

3. Erickson, who has been providing mental health services to Sarpy County for a period of twenty-three years, operates in concert with a psychiatrist, Jennifer Baker, M.D. (Dr. Baker), as needed. *Id.* at 4-5.

4. Erickson, through the SCJ nursing staff, communicated inmate medication issues to Dr. Baker. *Id.* at 41-42.

5. Adrian Dreessen, M.D. (Dr. Dreessen), is an emergency room physician whose medical group, Premier Healthcare Services, Inc., contracts with Sarpy County to provide medical services for inmates at the SCJ. *Id.* Ex. A - Dreessen Depo. p. 3-4.

6. Dr. Dreessen is familiar with the procedures used by Sarpy County to medically evaluate inmates when they are booked into the SCJ. *Id.* at 5. He described those procedures as an intake examination by a staff nurse to obtain a medical history of the inmate (surgeries, medicines, and allergies), and then a corroboration of that information with the inmate's last medical provider. *Id.* at 5-6.

7. In preparation for his deposition testimony, Dr. Dreessen reviewed the medical information and charting for the plaintiff while she was housed in the SCJ from July 23, 2007, up through November 7, 2007, when she was transferred to the Lincoln Regional

---

[2]The plaintiff's medical malpractice claim was previously dismissed by the court. **See** Filing No. 11 - Memorandum and Order.

[3]Page number refers to the hand written page number in the bottom right hand corner of exhibit.

Center (LRC). *Id.* at 6. He also reviewed the plaintiff's medical file and her subsequent treatment by James Gallentine, M.D. (Dr. Gallentine), of Lincoln, Nebraska, for a fracture of her talus bone and its repair. *Id.*

8. Dr. Dreessen was initially involved in a review of the plaintiff's medical history and medications upon her transfer to the SCJ on July 23, 2007. *Id.* at 8. He reviewed records of her prior hospitalization at Immanuel Medical Center (Immanuel) and noticed her history of depression. *Id.* at 8-9. He also noticed she had previously been prescribed Seroquel and Prozac, however, because she told her doctor the Prozac was not helping her, her doctor had switched her from Prozac to Lexapro. *Id.* at 9. Because of inmate security issues, Dr. Dreessen discontinued the Seroquel, which is used to help a patient sleep. *Id.*

9. Prior to August 20, 2007, the plaintiff refused to take the Lexapro prescribed by Dr. Dreessen. *Id.* at 10.

10. On September 5, 2007, Erickson first saw the plaintiff as a patient after she made a request to see a counselor through a request form she completed and submitted to the SCJ nursing staff. *Id.* Ex. B(5) - Progress Notes p. 1-2. This initial meeting, consisted primarily of evaluating her, taking her history, discussing her medications, documenting her needs and stressors, and performing a risk assessment. *Id.* Ex. B - Erickson Depo p. 8, 10-17; **see also** *id.* Ex. B(5) - Progress Notes p. 2-7.

11. Erickson held weekly counseling sessions with the plaintiff from September 5, 2007, through November 1, 2007. *Id.* Ex. B - Erickson Depo p. 18.

12. On or about September 7, 2007, Dr. Baker prescribed Prozac for the plaintiff's depression issues. *Id.* at 11-12.

13. On September 12, 2007, Erickson met with the plaintiff, noted the plaintiff's satisfaction with the medication adjustment back to Prozac, but Erickson did not see symptoms or behaviors that otherwise suggested a diagnosis of bipolar disorder or an Axis I diagnosis. *Id.* at 18, 20, 70; **see also** *id.* Ex. B(5) - Progress Notes p. 8.

14. On September 19, 2007, Erickson met with the plaintiff and noted her chemical dependency history and her desire to go to the LRC for chemical dependency treatment in lieu of jail. *Id.* Ex. B - Erickson Depo p. 23-24.

15.     On October 4, 2007, Dr. Dreessen saw the plaintiff for an injury to her neck. *Id.* Ex. A - Dreessen Depo. p. 12.  The plaintiff reported she was sliding down some stairs, head first, on to mattresses, and struck her head.  *Id.*  The plaintiff also reported hearing a crack in her neck.  *Id.*  Dr. Dreessen examined her, diagnosed a cervical strain, and prescribed ibuprofen, which resolved the condition.  *Id.* at 13.

16.     On October 22, 2007, Dr. Dreessen treated the plaintiff in an examination room at the SCJ for an injury to her ankle, which the plaintiff described as happening when she attempted to jump from a height onto a group of mattresses, missed the mattresses, and landed on her left leg.  *Id.* at 13-14.

17.     Dr. Dreessen examined the plaintiff and noted her ankle was swollen and bruised, however, there was no deformity and all other exams were normal.  *Id.* at 14-16. When he examined her, the plaintiff was not in a wheelchair and appeared to be bearing weight on the ankle.  *Id.* at 16.  The plaintiff complained of pain and tenderness around the ankle, so Dr. Dreessen ordered an x-ray, which was read by Jon Bleicher, M.D., and came back negative.  *Id.* at 16-18; **see also** *id.* Ex. A(3) - Bleicher Report p. 1-6.

18.     Dr. Dreessen was unable to see any fracture of the plaintiff's talus bone or ankle area from the x-rays.  *Id.* Ex. A - Dreessen Depo. p. 19-21.

19.     Dr. Dreessen instructed the plaintiff to elevate the ankle, keep an Ace wrap on it, use ibuprofen for pain, and bear weight as tolerated.  *Id.* at 22-23.  Dr. Dreessen opined it normally takes one to three weeks for an ankle sprain to resolve.  *Id.* at 22.  The plaintiff was temporarily placed in a safety cell to aid her recovery.  *Id.* at 23.

20.     Dr. Dreessen tracked the plaintiff's progress based on his assessment that she had a severe ankle sprain, but read in the nurse's notes that the plaintiff was noncompliant with care instructions.  *Id.* at 24; **see also** *id.* Ex. A(1) - Nurse's Notes p. 5-6.

21.     On November 1, 2007, the plaintiff reported to Erickson that approximately a week and a half prior, she jumped from the top of a tier of her unit onto a mat and injured her ankle.  *Id.* Ex. B - Erickson Depo. p. 31-32.  The plaintiff advised Erickson this was an unsupervised activity involving other inmates and that she engaged in this activity out of boredom.  *Id.* at 31-32.  Erickson did not view this as a psychiatric issue for the plaintiff. *Id.* at 32-34; **see also** *id.* Ex. B(5) - Progress Notes p. 19-21.

4

22. Erickson did not recall the plaintiff appearing to be in any pain, or using any cane, crutches, or a wheelchair as a result of her reported ankle injury during any of his meetings with the plaintiff. *Id.* Ex. B - Erickson Depo. p. 32, 66-67.

23. The plaintiff was transferred to the LRC on November 7, 2007, and Dr. Dreessen saw a note in her chart regarding her return to the SCJ on December 20, 2007, for a court appearance. *Id.* Ex. A - Dreessen Depo. p. 24-26. Dr. Dreessen also knew the plaintiff had surgery on her ankle on November 26, 2007, to repair a fracture to the talus bone that had been observed on a CT scan ordered by Dr. Gallentine. *Id.* at 26-27.

24. Dr. Dreessen further testified from his review of the medical records from Dr. Gallentine, the plaintiff re-injured her ankle on April 21, 2008, at the LRC. *Id.* at 28.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); **see** *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case." *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 853 (8th Cir. 2003). Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hervey v. County of Koochiching*, 527 F.3d 711, 719 (8th Cir. 2008) (**quoting** *Anderson*, 477 U.S. at 248). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on

> allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

See Fed. R. Civ. P. 56(e)(2). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)); see Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006). Specifically, the moving party "must show that 'there is an absence of evidence to support the nonmoving party's case.'" Nitro Distrib., Inc. v. Alitcor, Inc., 565 F.3d 417, 427 (8th Cir. 2009) (quoting Celotex, 477 U.S. at 325). In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); Border State Bank, N.A. v. AgCountry Farm Credit Servs., 535 F.3d 779, 782 (8th Cir. 2008). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Janis v. Biesheuvel, 428 F.3d 795, 799 (8th Cir. 2005).

Under this court's local rules:

> The moving party must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law.

See NECivR 56.1(a)(1).

Additionally:

> The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing

6

> party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

See NECivR 56.1(b)(1).

## ANALYSIS

### I. Failure to Comply with Nebraska Civil Rule 56.1

The plaintiff did not appropriately respond to the statement of material facts filed by the defendant. **Compare** Filing No. 30 - Brief p. 2-6, ¶¶ 1-25, **with** Filing No. 39 - Response p. 2-17, ¶¶ 1-62. Instead, the plaintiff filed her own statement of material facts to support her brief. As a result, plaintiff is not in compliance with Nebraska Civil Rule 56.1(b)(1) and the properly referenced material facts in the defendant's brief (Filing No. 30), will be considered admitted unless specifically controverted by the plaintiff.

### II. Dr. Cottam's Report

The defendant objects vigorously to this court considering the Psychological Assessment (Filing No. 37, Ex. 1) prepared by Glenda L. Cottam, PhD, J.D. (Dr. Cottam), for three reasons: there is no evidence in the record to establish that Dr. Cottam qualifies as an expert witness, the assessment is unsworn, and Dr. Cottam's assessment concerned the plaintiff's state of mind before she was a pre-trial detainee at the SCJ. **See** Filing No. 45 - Reply p. 1-4. Nevertheless, the court will consider Dr. Cottam's report when relevant because the record contains evidence the criminal trial court accepted Dr. Cottam as an expert witness and the assessment contains observations of the plaintiff while she was a pre-trial detainee at the SCJ. Moreover, consideration of the report does not alter the findings of the court. Specifically, that the defendant is entitled to summary judgment on all claims.

### III. 42 U.S.C. § 1983 Claims

The plaintiff asserts numerous Fourteenth Amendment claims[4] against Sarpy County under 42 U.S.C. § 1983, which provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. A county, such as the defendant, however, may only be held liable under § 1983 for a constitutional injury when either a county "policymaker" caused the injury, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), or a policy or custom of the county caused the constitutional injury. *Jenkins v. Hennepin County*, 557 F.3d 628, 633 (8th Cir. 2009). In this case, because the sole defendant is Sarpy County, the actions of any Sarpy County employees are irrelevant. **See** *id.* at 632 n.3 (holding actions of prison nurse not named as defendant in § 1983 suit is not material to summary judgement disposition of claim). Therefore, the first category of § 1983 claims, claims based on the actions of a so-called "policymaker," is not applicable. As such, the plaintiff must establish the existence of a policy or custom of the county that caused her to suffer a constitutional injury. The plaintiff's claims can be separated into two categories: (A) policies or customs regarding the treatment of SCJ inmates and (B) policies resulting in a failure to train the SCJ staff. Each category will be addressed in turn.

#### A. Policies or Customs Regarding the Treatment of SCJ Inmates

The Eighth Circuit has "observed an important distinction between [§ 1983] claims based on official policies and [§ 1983] claims based on customs." *Jenkins*, 557 F.3d at

---

[4]The Complaint (Filing No. 1, Ex.1) lists claims for violations under the Fourth, Eighth, and Fourteenth Amendments. However, because the plaintiff was a pre-trial detainee at the time of the alleged constitutional violations, her § 1983 claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment, not the Fourth or Eighth Amendments. **See** *Grayson v. Ross*, 454 F.3d 802, 806 (8th Cir. 2006) (holding the Fourteenth Amendment, not the Fourth, is not applicable to jailer's treatment of pre-trial detainees); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (holding a pre-trial detainee's § 1983 claim for inadequate medical care is properly categorized as a Fourteenth Amendment claim, while a convicted prisoner's § 1983 claim for inadequate medical care is properly categorized as an Eighth Amendment claim).

633. As such, the terms, "policy" and "custom," cannot be used interchangeably when conducting an analysis under § 1983. *Id.* To establish the existence of a policy for purposes of a § 1983 claim, the plaintiff must point to a county policy, such as an ordinance, rule, or regulation. *Id.* In contrast, to establish a custom for purposes of § 1983, the plaintiff must show "a continuing, widespread, persistent pattern of unconstitutional misconduct[.]" *Id.* at 634 (**citing *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)**). "From this standard it follows that '[l]iability for an unconstitutional custom . . . *cannot arise from a single act*.'" *Id.* (**quoting *McGautha v. Jackson County*, 36 F.3d 53, 57 (8th Cir. 1994)**) (emphasis added).

First, without distinguishing between policies and customs, the plaintiff asserts the following "policies or customs"[5] of the defendant violated her right to due process under the Fourteenth Amendment.

> The practice or policy of not providing mental health counseling for those with significant mental health problems until the inmate requests assistance creates a significant danger. The practice or policy of not having a doctor see and treat an inmate, even after recommended by the LMHP, creates a significant danger; the policy or practice of allowing an inmate with serious mental health problems to decide whether she will take her prescribed mental health medication creates a serious risk. The policy or practice of providing no doctor and providing only 2.75 hours of LMHP assistance over a period of over 3.5 months, to an inmate with serious mental health problems, creates a serious risk. The practice or policy of not supervising inmates in the Sarpy County Jail creates the risk that they will participate in dangerous activities such as sledding down stairs into mattresses or jumping off 2nd story, 15-foot high tiers. The practice or policy of not properly communicating between jail nurse staff and the jail doctors creates a serious risk. The practice or policy of not doing personal follow-up medical reviews by the jail doctors creates a serious risk. The practice or policy of allowing nursing staff to determine whether to

---

[5] The plaintiff did not consistently use the phrase "policy or custom" in her brief, sometimes opting for "practice or policy" instead, and using "official policy, practice or custom and/or de facto policy or custom" once. **See** Filing No. 39 - Response p. 18-24. Nevertheless, the Supreme Court made it clear that a "practice" should be analyzed under the same rubric as a "custom" for purposes of a § 1983 claim against a municipality. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (noting a "widespread *practice* that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a *custom*") (emphasis added).

>prescribe canes, crutches, or wheelchairs creates serious risks. The practice or policy of not prescribing canes, crutches, or wheelchairs to inmates with serious mental health problems because they act belligerent creates a serious risk of permanent injury to the inmate.

Filing No. 39 - Response p. 22-24. To survive summary judgment on these claims, the plaintiff must first offer evidence from which a reasonable jury could conclude at least one of the alleged policies or customs existed. **See *Jenkins*, 557 F.3d at 633**. In addition the plaintiff must offer evidence the defendant acted with the requisite level of culpability and show the policy or custom was the moving force behind her alleged injury. *Id.*

After a complete review of the record the court finds no reference whatsoever to any official policy promulgated by the defendant. Neither exhibits nor pleadings draw the court's attention to any evidence the alleged policies were actually enacted by the defendant in the form of an ordinance, rule, regulation, or similar means. Therefore, the plaintiff must establish the alleged polices or customs under the § 1983 "customs" standard.

The plaintiff fails to establish the existence of any county custom because she relies entirely on her single experience while an inmate at SCJ to support her customs claims. To the extent the plaintiff relies on the testimony of Dr. Dreessen and Erickson to support her custom argument, this testimony is insufficient to establish "a continuing, widespread, persistent pattern of unconstitutional misconduct." **See *id.* at 634** (holding the testimony of a nurse supervisor "that she perceived a variety of shortfalls in the Detention Center's provision of medical care . . . was insufficient to establish the pervasive pattern of constitutional violations required to sustain liability" for customs claim under § 1983). Accordingly, the evidence offered is insufficient for a reasonable jury to find any of the alleged "policies or customs" actually existed and the defendant is entitled to summary judgment on all of these "policy or custom" claims.

In addition, even if the court assumes, *arguendo,* that the above mentioned polices or customs do exist, to establish a cognizable due process claim under § 1983, the plaintiff must also show that said policies or customs "shock the conscience." *Terrell v. Larson*, 396 F.3d 975, 979-81 (8th Cir. 2005) (**quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)**). Whether a policy or custom shocks the conscience "is an issue of law for the judge, not a question of fact for the jury." *Terrell*, 396 F.3d at 981. Deliberate

indifference is the lowest level of culpability that can be said to "shock the conscience." *Lewis*, 523 U.S. at 851. The Supreme Court has defined deliberate indifference, albeit under the Eighth Amendment, as follows: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, ***and he must also draw the inference***." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Accordingly, there is both an objective and subjective requirement to deliberate indifference.

In the instant case, there is no evidence the defendant was deliberately indifferent to the medical care or supervision of inmates in the SCJ. The day the plaintiff arrived at the SCJ, a registered nurse completed an intake examination. Within a few days of the plaintiff's arrival, Dr. Dreessen reviewed her medical history and prescribed the medication he believed she needed. Further, the plaintiff was taken to see Dr. Dreessen, a licensed physician, each time she was injured while in the SCJ. In addition, when the plaintiff requested to see a counselor, Erickson, a LMHP, met with her. There is nothing in the record to indicate the SCJ staff knew the plaintiff needed supervision beyond that of an ordinary inmate. The plaintiff argues the SCJ staff should have known she was likely to hurt herself based on the first incident (sledding down stairs) and the plaintiff's medical history, which included multiple suicide attempts. Although this might satisfy the objective requirement of deliberate indifference, it cannot satisfy the subjective requirement.

The court finds the plaintiff has produced no evidence to show the defendant actually knew the plaintiff required additional supervision or additional medical treatment. Instead, all of the evidence shows that each time the plaintiff was injured or requested medical treatment, such treatment was provided. In addition, the evidence shows that after the plaintiff injured her ankle she was placed in an individual cell as a safety measure. As such, the plaintiff has offered no evidence to from which a reasonable jury could conclude the county's policies or customs amounted to deliberate indifference to the plaintiff's constitutional rights. Therefore, even if the alleged policies or customs did exist, the defendant is still entitled to summary judgment on each of these "policy or custom" claims.

    **B.    Failure to Train**

Under certain circumstances, a county's failure to adequately train its employees can result in liability under § 1983.  **See** *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). However, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.  In a § 1983 claim for failure to train "the focus must be on adequacy of the training program in relation to the tasks" the employee ordinarily performs.  *Id.* at 390.  It will not suffice to prove a particular employee was unsatisfactorily trained, "[n]either will it suffice to prove that an injury or accident could have been avoided" if an employee had "better or more training." *Id.* at 390-91.  Adequately trained personnel "occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391.  The plaintiff claims the defendant had a policy of failing to adequately train SCJ employees for the tasks the employees ordinarily performed. Specifically, the plaintiff alleges Sarpy County's failure to train SCJ employees resulted in the (1) inadequate medical treatment for the plaintiff, (2) inadequate supervision of the plaintiff, and (3) use of excessive force on the plaintiff.  **See** Filing No. 39 - Response p. 26-27.  Each claim will be addressed in turn.

### 1. Inadequate Medical Treatment

First, the plaintiff contends Erickson "was not properly trained or qualified to provide the mental health care that the plaintiff required." Filing No. 39 - Response p. 26. The plaintiff relies on "a comparison of his assessment versus Dr. Glenda Cottam's assessment" to support her claim. *Id.*  No such comparison is necessary or appropriate.  Instead, in order to survive summary judgment, the plaintiff must point to evidence showing Sarpy County objectively and subjectively knew that hiring an LMHP, such as Erickson, to counsel mentally ill inmates, would likely cause a constitutional injury to inmates.  Under Nebraska state law an LMHP is qualified to provide diagnosis and treatment for serious mental health disorders, so long as he works in consultation with a physician, psychiatrist, or similarly trained medical professional.  **See** Neb. Rev. Stat. § 38-2115(2)(d) and (g).  Accordingly, even if the defendant had a policy of hiring LMHPs to work in consultation with a

12

psychiatrist, in order to diagnose and treat inmates with serious mental illnesses, such a policy would not evidence deliberate indifference to the constitutional rights of inmates. Therefore, the defendant is entitle to summary judgment on this claim.

Second, the plaintiff contends the defendant failed to adequately train the SCJ nursing staff because "the nursing staff was not properly trained to treat Emily White." Filing No. 39 - Response p. 26. The plaintiff does not argue the SCJ nurses were not adequately trained as nurses. Instead, the plaintiff argues that because communication between the plaintiff and physicians at the SCJ sometimes occurred through the SCJ nursing staff, the nurses were performing the tasks of a doctor and therefore, the nurses should have been trained as doctors. **See** *id.* The evidence, however, clearly shows that Dr. Baker, Dr. Dreessen, Erickson, and SCJ nurses were all involved in the plaintiff's treatment. The evidence shows that when the SCJ nurses received the plaintiff's request to see a counselor the request was given to Erickson, an LMHP. The evidence also shows the SCJ nurses documented their encounters with the plaintiff in the medical chart and those notes were reviewed by at least one licensed physician, Dr. Dreessen. There is no evidence from which a reasonable jury could conclude the SCJ nursing staff performed, or was asked to perform, duties beyond the typical scope of practice for a nurse. Further, there is no evidence the SCJ nursing staff did not hold proper licenses to render medical care as nurses. As such, even if the defendant had a policy of hiring registered nurses to facilitate communication between inmates and physicians, such a policy would not evidence deliberate indifference to the constitutional rights of inmates. Therefore, the defendant is entitled to summary judgment on this claim.

### 2. Inadequate Supervision

The plaintiff claims the SCJ correctional officers were inadequately trained to supervise inmates. **See** Filing No. 39 - Response p. 26. The plaintiff points to no specific policy the defendant adopted that resulted in insufficient training of the staff and there is no evidence SCJ correctional officers were acting outside the normal tasks assigned to correctional officers when supervising inmates. The Nebraska Administrative Code sets forth the standards for the training of jail personnel. The standard is as follows:

> 003.01 Facility Orientation Training. All new employees shall be provided orientation training on the facility's policies and procedures, organization, structure, programs and services, and task orientation to their particular job assignments, shift duties and equipment used. Orientation training shall be successfully completed within 3 months of employment. Orientation training shall include training in the following areas that are appropriate for the employees job assignments:
>> 003.01A Inmate supervision, inmate security, inmate management, and inmate rules, regulations and enforcement procedures . . .

81 Neb. Admin. Code § 2-003.01, -003.01A.

These standards, however, are promulgated by the state of Nebraska, not Sarpy County. Accordingly, § 1983 liability may attach only if Sarpy County has taken actions to adopt these "policies." Assuming, without deciding, Sarpy County has taken actions to adopt these policies so that said standards can be considered county policy for purposes of § 1983, there is no evidence the policy is so deficient as to constitute deliberate indifference to the supervision and safety of SCJ inmates. Therefore, the plaintiff has failed to offer any evidence from which a reasonable jury could find the defendant was deliberately indifferent to the constitutional rights of inmates by adopting a policy that resulted in inadequate training for the SCJ correctional officers. Therefore, the defendant is entitled to summary judgment on this claim.

### 3. Excessive Use of Force

The plaintiff contends that because the SCJ correctional officers were "not properly trained, they employed practices or customs" that forced her to walk on a fractured ankle, which amounted to a constitutional injury as an excessive use of force. Filing No. 39 - Response p. 27. The relevant inquiry is whether a county policy of inadequate training for SCJ correctional officers caused them to use excessive force. See **Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404-05 (1997)** (holding when a deputy used excessive force to effect an arrest, § 1983 municipal liability could attach only if the plaintiff established a policy of the municipality was the cause of the excessive use of force by the deputy). Again, the plaintiff has failed to produce any official policy that resulted in inadequate training for SCJ correctional officers to perform the tasks ordinarily

assigned to correctional officers. In addition, the plaintiff has not produced any evidence the SCJ correctional officers were acting outside the ordinary tasks assigned to correctional officers when allegedly making the plaintiff walk on her fractured ankle. Therefore, no reasonable jury could find a county policy existed that resulted in inadequate training for the SCJ correctional officers and caused the alleged excessive use of force.

      In any event, even if it is assumed that such a policy did exist, the court finds, as a matter of law, there was no excessive use of force against the plaintiff. A § 1983 claim for excessive force brought by a pre-trial detainee under the Fourteenth Amendment relies on the same objective reasonableness test used in Fourth Amendment analysis. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). Under this test, a court should consider whether the force in question was applied in good-faith or "maliciously and sadistically for the very purpose of causing harm." *Id.* at 1061 (**quoting** *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). There is no evidence a SCJ correctional officer intentionally forced the plaintiff to walk on her ankle in order to "maliciously and sadistically" cause harm before her appointment with Dr. Dreessen. After her appointment with Dr. Dreessen, if correctional officers did force the plaintiff to walk on her ankle, such actions were in accordance with the directions from Dr. Dreessen. As such, these actions cannot be characterized as malicious, sadistic, or intending to cause harm. There is no evidence the plaintiff told the SCJ staff she needed additional medical attention or that she was unable to walk on her ankle as requested. There is no evidence the SCJ staff knew the plaintiff had a fractured ankle and there is nothing malicious or sadistic about having an inmate walk on a presumptively sprained ankle under the circumstances. In fact, after a full examination that included x-rays, Dr. Dreessen, a licensed physician, recommended the plaintiff walk on her ankle. As such, no reasonable jury could find the SCJ correctional officers acted maliciously or sadistically or intended to cause harm by making the plaintiff walk on her ankle. Therefore, even if the defendant did have a policy of inadequate training for SCJ correctional officers, such a policy did not cause the use of excessive force by the SCJ correctional officers. Accordingly, the defendant is entitled to summary judgment on this claim.

### IV. State Law Claims

The plaintiff's claim for negligence is asserted under Nebraska state law, however, because all federal question claims are settled by this order for summary judgment, this court is under no obligation to exercise supplemental jurisdiction over the negligence claim.[6] Nevertheless, in its discretion, the court has analyzed the plaintiff's state law claims under existing precedence from the Supreme Court of Nebraska and found, that as a matter of law, the plaintiff has failed to produce evidence from which a reasonable jury could conclude the defendant is liable for negligence.

The plaintiff alleges the defendant was negligent by breaching its duty to protect and supervise the plaintiff while she was an inmate at the SCJ and this breach caused the plaintiff physical injury when she jumped from a height of approximately 15-feet, fracturing her ankle. Under Nebraska's Political Subdivisions Tort Claims Act, in a claim against a county for negligence, "a claimant must prove all four of the basic elements of negligence: duty, breach of duty, proximate causation, and damages." *Willet v. County of Lancaster*, 713 N.W.2d 483, 487 (Neb. 2006) (**citing** *Scholl v. County of Boone*, 549 N.W.2d 144 (1996)); **see also** *A.W. v. Lancaster County Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010). "While the existence of a duty and the identification of the applicable standard of care are questions of law, the ultimate determination of whether a party deviated from the standard of care and was therefore negligent is a question of fact." *Cingle v. Nebraska*, 766 N.W.2d 381, 389 (Neb. 2009). In the instant case there is no question the defendant owed the plaintiff a legal duty. The Nebraska Supreme Court described that duty as follows: "A jailer is bound to exercise, in the control and management of the jail, the degree of care required to provide reasonably adequate protection for his or her inmates." *Goodenow v. Nebraska Dep't of Corr. Servs.*, 610 N.W.2d 19, 22 (Neb. 2000). The plaintiff contends the defendant breached its duty to protect her by (1) failing to provide her with proper medication, (2) failing to properly supervise her, and (3) failing to provide proper medical diagnose and treatment.

---

[6]In the Complaint (Filing No. 1, Ex. 1) the plaintiff claims intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED), however, these claims are not made against the defendant Sarpy County. **See** *id.* ¶¶ 51, 57. Accordingly, there is no need for the court to address them.

First, the evidence establishes the defendant was providing the plaintiff with her preferred medication, Prozac, at the time her ankle injury occurred. Second, there is no evidence in the record regarding the defendant's supervision of the plaintiff when the injury occurred. Instead of producing evidence of where the correctional officers were positioned within the SCJ, through affidavit or deposition testimony, the plaintiff asks the court to rely entirely on the fact that she jumped from a height of approximately 15-feet to determine the defendant breached its duty to supervise or protect SCJ inmates. Filing No. 39 - Response p. 28. But, mere allegations are insufficient to survive summary judgment and the plaintiff may not rely only on her own conduct in an attempt to establish what actions the defendant did or did not take. Third, the evidence shows the defendant provided licensed physicians and medical professionals to treat the plaintiff while she was an inmate at the SCJ.[7] As such, the court finds the plaintiff has failed to produce any evidence from which a reasonable jury could find the defendant breached its duty to provide reasonably adequate protection for inmates. Therefore, the defendant is entitled to summary judgment on this claim.

Moreover, under Nebraska law, a court may "determine that the defendant did not breach its duty of reasonable care, as a matter of law, where reasonable people could not disagree about the unforeseeability of the injury." *A.W.*, 784 N.W.2d at 918. Therefore, on motion for summary judgment, a court must consider the foreseeability of the injury claimed by the plaintiff, in this case, jumping from a height of 15-feet and fracturing her ankle. Filing No. 39 - Response p. 28 ("The damages incurred include, ***but are limited to***, her pain and suffering attributable to the broken ankle.") (emphasis added). At the time the plaintiff injured her ankle she was taking her preferred medication and participating in weekly counseling sessions with Erickson. At that time, Erickson did not believe the plaintiff presented any danger to herself. Because a trained LMHP could not foresee the risk of such an injury under the circumstances, the court finds, as a matter of law, it was

---

[7]A claim for medical malpractice against the physicians and medical professionals is not before the court and therefore no inquiry will be made as to whether they breached the applicable, professional standard of care in diagnosing and treating the plaintiff.

17

unforeseeable to the defendant that the plaintiff would disregard the obvious danger posed by jumping from a height of 15-feet to injure her ankle.

Further, the court finds, under Nebraska law, the plaintiff jumping from a height of 15-feet constitutes an intervening cause. An intervening cause is an independent action, "which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury." *Willet*, 713 N.W.2d at 488. The Supreme Court of Nebraska held, under the intervening cause theory, a county was not liable for negligence for failing to replace a stop sign when a driver "unreasonably disregarded the obvious danger" and entered the intersection without stopping. *Zeller v. County of Howard*, 419 N.W.2d 654, 659 (Neb. 1988). In the instant case, when the injury occurred, the plaintiff was taking her prescribed medication and undergoing counseling. Accordingly, the court finds the county is not liable for failing to more closely supervise the plaintiff because she "unreasonably disregarded the obvious danger" of jumping from a height of 15-feet and thereby broke the causal connection between any wrongdoing by the defendant and her injury. Therefore, the defendant is entitle to summary judgment on this claim.

**IT IS ORDERED:**

1. The defendant's Motion for Summary Judgment (Filing No. 28) is granted.
2. This action and the plaintiff's complaint are dismissed with prejudice.
3. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

DATED this 17th day of March, 2011.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.